Counsel, are you ready? Yes, Your Honor. Good morning. My name is James Byrne. I represent Francia Padilla. Your Honor, on January 30, 2002, Ms. Padilla, like hundreds of thousands of other people, applied for adjustment of status under the LIFE Act. She applied with the government's assurances to the press that no action would be taken against her based on this application. When she showed up the morning of January 30, 2002, five months pregnant, having suffered a previous miscarriage, she was arrested and handcuffed by the Immigration and Naturalization Service. They had already booked a flight for her. It turns out to have been subject to an earlier removal order. That is correct, Your Honor. Okay. I don't know that the INS issued anything that said that somebody subject to a prior removal order for presenting false documents would not be arrested. No. I think what it said is if you are merely here in the country illegally and have no other disabilities, then you can show up, pay $1,000 and get an adjustment. So I think trying to work up sympathy for her. When we get to the legal issues. Your Honor, with due respect, because we weren't able to create an administrative record, the government's memorandum to its offices didn't say what Your Honor just purported to say. I mean, I can quote from it. Again, we did not have the opportunity to create an administrative record. So with all due respect to the court, that is not what the memorandum to the regional offices by the central office in Washington, D.C. said. I can quote to the court exactly what it did say. It said, consequently, field offices shall not initiate removal proceedings against an alien who is eligible for adjustment under 245i if such action is based solely on the filing of an immigrant petition. And I can go on. So effectively... If somebody is eligible... Correct. But your client is not eligible. I mean, she's got another disability. She has a disability. But the disability is a result of the regulation implementing 245a-5, which doesn't give her the right to a hearing. Her disability was a result of the fact that she was removed and ordered not to come back in the country for five years. And then the next day she shows up. She ignores the order. I mean, she gets removed for presenting a false document and told not to appear for five years. And the next day she shows up in the country and walks right in. And then when she gets asked about it at her adjustment hearing, she admits to it. I think that's the reason she's in trouble, not because of anything else. Maybe it's a tough case and certainly a hardship case. We can talk about that. But I don't think you're going to get much traction in suggesting your client was defrauded somehow by the INS. Why don't we talk about the legal issues? Well, the legal issue, Your Honor, is that Castro-Cortez attacks the reinstatement of removal orders on numerous grounds, the right to counsel, the right to create an administrative record. It points out specifically that nowhere in the statute did it say that a person should not have the right to a hearing. Alvaranga confirms that, that an alien is entitled to the one fair hearing. Well, didn't that case just assume it because there had been a full fair hearing? I mean, this is really the question that was left open there as to whether we could assume in that case that one was required because one was held, but we didn't really quite get all the way there. That's an interesting point. That's an interesting point. That's more like a fact. Pardon me? It's more than a point. It's a fact. Correct. But then the issue is then left open for this Court to decide. Why are you here to argue it, not assume it? Well, actually, Alvaranga says a little more than that. It says another hearing is denied only to those aliens who have already been excluded, deported, or removed in italics after having been given one full and fair hearing, including the right to judicial review. The case seems to be reading the regulation as pertaining only when there hasn't been a full and fair hearing first. Yes. I concur with Your Honor on that. But is there a basis for that reading? Is there any? Is there a basis? Yes. An interesting approach to this case. Is there a statutory or regulatory argument that would avoid the constitutional issue? Well, a hearing in this case would have resolved all the issues.  that we are forced to bring in front of the Court here today. Now, are you trying in any way to go behind the earlier removal order? No. We did not take that position in our brief. All you're saying is that she has a right now to a hearing on reinstatement in which she can raise a cancellation of removal argument. Based on how, Chief? We are trying to, this Court requests a hearing so she can raise an adjustment of status argument based on her valid marriage to a United States citizen and apply for the waiver of relief which is provided for to other people that would be in a similar situation. So there is currently a waiver of relief available despite her earlier removal? That's correct. You could, assuming the validity of the earlier removal, if you had a hearing, apply for a waiver of relief? That's correct. And the only way that we can get that waiver is that we actually have an opportunity for a hearing in front of an immigration judge. Or this Court says that the Immigration Service shall consider, which they now do in the Castro-Cortez, the pre-'90 ones, the pre-Ira-Ira adjustment of status cases, where they literally tell them to bring the waiver with them, which is when this Court previously found the non-retroactivity of the reinstatement of removal procedures. I don't understand what you mean by that, bring the waiver with you. After this Court ruled on – I understand that, but I don't understand bringing a waiver with you. Okay. When they applied for adjustment under the LIFE Act, the 245-I Act, then if they had a previous deportation order, pursuant to this Court's order, they are now allowed to file the waiver with the adjustment of status application. By the request for the waiver, you mean? Excuse me, yes, the request for the waiver with the application. All we are asking is – So you're basically asking for the same procedures that the people who are covered by Castro-Cortez are getting. Yes, Your Honor. And you're asking it on the basis that Alvaro Ongo distinguishes between people who had full and fair hearings earlier and people who didn't. Yes, Your Honor. So if your person had been removed earlier after a full and fair hearing, she couldn't have gotten it. That's correct, Your Honor. And that would give credence to what the LIFE Act intended, which was the subsequent intention of Congress in passing the LIFE Act. And what happened as a result is this trap that was created. And it wasn't mandated by the statute. It was mandated – it became a part of the implementing regulation. But your client is only a subset of the people and people who are affected by this LIFE Act problem are only a subset of the people who would be affected by such a ruling because presumably it would apply to anybody who had been earlier removed in an expedited proceeding and who is now back in the country with any possible showing of prejudice in a reinstatement proceeding. I don't know if that's for me to say. I mean, the facts that I – On what rationale would your group of people be different? I'm sorry? On what constitutional or statutory rationale would your group of people be different? If they did not have – if they did not apply under the LIFE Act, then they would be procedurally different. They would be procedurally different. Why does the LIFE Act make a constitutional or statutory difference? Because the LIFE Act provides for adjustment of status of people that illegally entered the United States without inspection. Right. But there are other statutes that also provide for adjustment of status of such people. Not adjustment of status. Cancellation is a different thing altogether. But adjustment of status, the LIFE Act created this ability for people that illegally entered the United States to change their status. Okay, thank you. We'll hear from the Governor. All right, let me start by addressing the issue of the trap, because I would like to make a couple of points on that. First of all, this illegal reentry occurred well after IRERA was passed and well after 241A5, the reinstatement statute was in effect. It was clear that the statute says that there's no relief available for an illegally reentering alien. Also, one other thing that I'd like to point out initially is on the adjustment application, which the INS – which was submitted to the INS, it was indicated on there that there was no prior removal. It appears to be a fraudulent document. So this idea of a trap, I mean, that's probably why the INS didn't just deny the application initially and why there was this interview. So I want to – I'm sorry. If she had – Well, the adjustment application – Correctly – Identified that she had been previously removed, it might not have gotten to the stage from which there's actually an interview at the adjustment level. Sent somebody out to arrest her? Well, they certainly wouldn't have had an interview, it would seem to me. But, I mean – Only if they'd been clever, right? What's that? Only if they'd been clever. Yeah, perhaps. I don't know. You know, the INS, I'm not sure that that happens too often. But with regard to – this case is basically the same case as the last case, except here there's a claim of relief of adjustment status. And there's no – It seems to me there are two distinctions. One is that in this case, the applicant is not trying to challenge the previous removal order. Yeah, that's right. And the second is, she's saying that she can demonstrate prejudice because she can demonstrate the potential of relief for those things that have occurred between the previous removal and today. So she's saying there's potential prejudice and I'm not attacking the previous order. Right. And I guess the potential prejudice, I guess, is coming from the adjustment of status issue. Now, claiming eligibility for adjustment of status. And as we've said forth in our briefs, it's very clear. First of all, the plain language of the statute says that they're not eligible for any relief. So right there – Is she not correct that she might be eligible for a waiver? Is that not right? Well, I'll read the language of AUSC Section 1231A5. If the Attorney General finds that an alien has reentered the United States legally after having been removed or having departed voluntarily under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed – Well, but you're just reading us the – you keep reading us the statute. I'm not finished. The alien is not eligible and may not apply for any relief. Well, yes, but we're asking the question of whether that is a constitutional provision, given the fact that she was not removed after any procedures. Well, Congress can – Congress has the authority to enact statutory bars to discretionary relief. That's what they've done here. It's nothing – this has nothing to do with the prior expedited proceedings. If the senator hadn't had the prior expedited proceedings, she wouldn't have been barred. Right? That's why she's barred. She was lawfully removed in these expedited proceedings. She was lawfully removed. There's no issue about that. She came – She's not challenging that. No, she's not challenging that. She was lawfully removed. But she is challenging the question of whether or not she can be barred now from relief to which she would otherwise be eligible on the basis of a proceeding that never – as to which she had no proceedings or whether she needs at least now to be able to apply for relief. She's not attacking the prior proceedings. I don't understand that. She is attacking the process which now binds her for purposes of present relief to the prior proceedings. It would have been the same thing if she was given a full panoply of proceedings before the world court and she was deported. She came back in illegally. The statute at the time says even before – she came back after the statute was enacted. The statute clearly put on notice that if you illegally re-enter, you're ineligible for any relief. It doesn't matter what proceedings she had previously. She was deported. Then she came back in illegally, and the statute bars her, plainly bars her. Now, what they're claiming is that the statute should not be read to bar adjustment of status, and they're relying on the Life Act. I mean, that's really their principal argument. They're not making this argument about the fact that the prior proceedings somehow resulted in unfair denial of now, of her adjustment of status claim. They're saying that the Life Act should be read to preclude or supersede the agreement statement statute. That's really their main argument. And as we've laid out in our briefs, that is flatly refuted by recent congressional amendments, which carve out a specific exception for allowing illegally re-entering aliens to apply for adjustment of status for Haitians, for Nicaraguans, and for Cubans. And Congress did that in a couple of acts that the Nicaraguan Refugee Relief Act. I don't think I'm saying that correctly, but there was two acts pertaining to Haitians and Nicaraguans. And if you go to the regulations, Your Honors, you'll see in the reinstatement statute, not the statute, but the regulations themselves, that the Attorney General reacted to these statutes by enacting 8 CFR Section 241.8D, which says that if you're a Haitian or Nicaraguan or Cuban and you're eligible under the Life Act, or these acts, actually the Life Act amendments, you can apply for adjustment of status, irrespective of Section 241.85, the reinstatement statute. Well, I think that's very clear of what Congress was intending. Congress was intending that the reinstatement statute preclude all applications for adjustment of status. And if it wanted to make an exception for this Life Act, 245I, it would have done so exactly as it did here. So I think that's dispositive. If the plain language is not dispositive, I think the congressional legislative history is dispositive on that point. Now, let's say that you prevail here and she is removed. Does she have any opportunity to raise adjustment of status claim based on her marriage and hardship and so on once she's out of the country? Well, Your Honor, she can proceed under consular processing, which is the way that under what? I'm sorry. It's called consular processing. It's the way that someone who is married to a United States citizen, if they're not in the country, would attempt to get legal status in the country if they're abroad. So if she's deported. But isn't she barred from doing that because of the early removal? She is barred, Your Honor. But there is an exception in the statute that allows the attorney general to waive the bar or, in essence, to grant permission to reenter before the running of the bar. So I believe, and I'm not sure, I think she's barred for. Suppose she did that, all right, and she's back in the country. Right. And someone tries to reinstate her earlier removal order. What process would she have then? They couldn't, Your Honor, because if she actually applies from abroad and actually gets the visa and then gets permission to reenter, she would be making a legal entry and then the reinstatement statute would not apply. Why not? See, that's the problem with the reinstatement statute. Since there's no – the reinstatement statute says that if you were removed under an order of removal, the prior order of removal is reinstated and you have no process. So why couldn't someone come in and reinstate that prior order again? Because you have to have an illegal reentry. Under the statute, you have to have illegal reentry. So you get to prove the illegal reentry? I thought you don't get to prove that. Prove that it was not illegal. When would she get to prove that it was not illegal? She would get to prove that it's not illegal if that was a claim that she was making. It's not a claim she's making here. But I'm addressing Your Honor's question about consular processing. If she were admitted to the country through a visa, then the INS would not – You're saying – just let me see what you understand the process to be. If somebody was – if the Attorney General tried to apply the reinstatement of removal order procedure to someone and her defense was I did not enter illegal, I had a legal visa, then what could she do with that? Well, she could present that to the service. Right. And suppose the service said we don't agree with you. She could present it to this Court on a petition for review. But let me point out, Your Honor, that the service regulations require under 8 CFR 241.8, I believe it's B or C, require that the service investigate any claims of lawful entry by the alien. That's in the regulation. It's a requirement before reinstatement occurs. So she could make that – she certainly had that opportunity. But then she had the opportunity to seek review in this Court. And this is a claim that this Court could hear because it's a threshold issue. She have a record? Would there be a hearing, a prior administrative hearing on it? She could submit whatever evidence that she had of her lawful entry to the INS that would form the basis of administrative record. There would be no hearing. But, you know, this Court in Gallo-Alvarez, in similar circumstances, has said one way to remedy that without finding the position unconstitutional is to engage in a limited fact-finding to district court to enable the alien to set forth any evidence that they had that was not able to be made in the INS proceeding. That's the decision in Gallo-Alvarez v. Ashcroft. Yes, I know. So that is another safeguard that's available. But in that specific instance, and I see my time is running out, that the regulations actually contemplate that the service would have to investigate any claims made by the alien, saying that, oh, I entered the country legally. Okay. Thank you. Thank you, Your Honors. We'll give you a minute for rebuttal if you wish to take it. Your Honor, with regards to the issue of the review of the waivers abroad, there is no judicial reviews of those waivers abroad. What about the representation that because of the earlier removal she is not eligible and may not apply for any relief under the SAC, therefore no waiver of relief is available? That is the crux of the issue, I think, before the Court here today, that that interpretation of what that statute says combined with what the Life Act intended creates this due process violation that we have alleged in our brief. If you agree with opposing counsel that if the statute means that there is no relief available, then there is no prejudice and therefore no relief. I understand you don't agree with the premise, but assuming that we disagree with your reading of the statute, there would be no prejudice. I could understand how you would arrive at that, but this case cries out that there is prejudice and counselor processing doesn't cure the problem. Why not? Because there is no review of the waiver by any authority when the person applies in Guatemala City. But you don't dispute that she can apply. She is eligible for application and she is required to put an exercise of discretion under the statute. So the claim of hardship and the claim of marital citizenship will, in fact, be considered. She may not like the outcome and there may not be any review of the judicial review of the process, but there is a procedure for presenting a claim. There is a procedure for presenting a claim abroad, and yes, and if the court orders her abroad, then she will languish abroad until such time, and there is no review of the claim. And that ultimately is there is no due process here then ultimately. I'm trying to understand the interaction between the substantive and procedural questions here. Could you succinctly tell me what your argument is about why the provision in the reinstatement statute precluding eligibility for relief isn't a substantive bar to her getting relief now quite aside from any procedural question? As I understand it, you want procedure now with regard to her adjustment of status and her eligibility for a waiver, right? Yes. But you also said that you're not trying to go behind the earlier removal. That has been the tactic we have taken in the case. So if you are seeking procedure now with respect to her adjustment of status and her waiver, how can she get the waiver if the reinstatement statute precludes it? I understand you have an argument about that. I don't know what it is. We did not attack the first removal order. Maybe in hindsight we should have, but that's not what we did. And what we did, what we're trying to say succinctly is that what transpired here in this set of facts, given the subsequent enactment of the LIFE Act and what the LIFE Act was intended to do, the LIFE Act did not intend, as it happened in Castro-Cortez to two of the people in Castro-Cortez, it did not intend to act as a denial of what Alvarenga calls that full and fair hearing. And I guess I haven't been as succinct as I would like to be. But if you take the history from Castro-Cortez to ---- But what is the hearing going to be about? The hearing we believe should be about ---- Adjustment of status. Adjustment of status. And she needs a waiver. And she needs a waiver. And if she is not eligible for a waiver, then what's the statute, the proceeding about? Are you making an argument that she is eligible for a waiver? I am making the argument that she is eligible for the waiver. We've made that in our briefs and we reiterate it now in front of this Court. A substantive argument. A substantive argument. Not a procedure argument. And it's basically an argument that because of the LIFE Act, this provision of the Reinstatement Act provision does not bar her from relief. Is that your argument? Yes. And it's a substantive argument. Yes. And procedural as well. Because procedurally, what transpired here, I don't think anybody ---- I don't think that it was intended that with these set of facts that you would end up with this type of result. Thank you. Thank you. Okay. This is how you will stand submitted.
judges: Kozinski, Graber, Berzon